# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **LARRY D. PURVIANCE &** | ) | **Case No.  04-20665-TLM** |
| **VICTORIA A. PURVIANCE,** | ) | |
| | ) | |
| Debtors. | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| _____ | ) | |
| | ) | |
| **VICTORIA A. PURVIANCE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adversary No. 04-6153-TLM** |
| | ) | |
| **REGION 1 SELF RELIANCE** | ) | |
| **PROGRAM,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## INTRODUCTION

Larry and Victoria Purviance ("Debtors") filed a petition for relief under

chapter 7 on May 4, 2004, initiating Case No. 04-20665-TLM.  On July 12, 2004,

Debtor Victoria Purviance ("Plaintiff")[1] filed a pro se complaint seeking an order

_____

[1] On occasion and for clarity, the Court will also use the Debtors' first names.

MEMORANDUM OF DECISION - 1

declaring debts arising out of a Canadian child support order in favor of Victoria's

ex-husband, Dr. Garnet Falck, dischargeable.[2]  The Complaint named Region 1

Self Reliance Program, a division of the Department of Health and Welfare for the

State of Idaho charged with collecting unpaid child support in Kootenai County,

Idaho ("State"), as the only defendant.

The State answered the complaint and ultimately moved for summary

judgment.[3]  *See* Doc. Nos. 5, 13 and 17.  Victoria also moved for summary

judgment, but failed to properly notice her motion for hearing.  *See* Doc. No. 12.

Nonetheless, without objection, the Court heard both parties' arguments on March

29, 2005, and the matter was taken under advisement.

The following constitutes the Court's determination on the motions as

required by Fed. R. Bankr. P. 7056.  The Court concludes that the State's motion

will be granted, though only in part, and that Plaintiff's motion will be denied.

The cause will be set for trial on issues that cannot be properly resolved at this

---

[2]  The complaint, Doc. No. 1, was filed only by Victoria and did not include her husband and joint debtor, Larry, as a named plaintiff.  However, the "adversary proceeding cover sheet" which was attached to the complaint listed both Debtors as plaintiffs.  The Court follows the form of the complaint and of the other pleadings filed throughout this matter by both parties, and will refer solely to Victoria as Plaintiff.  Though her husband would appear to have some interest in the outcome of this matter, his role in this litigation has solely been as Victoria's lawyer, appearing subsequent to her initiation of the matter as a pro se plaintiff.  (Larry is a licensed Idaho attorney.)

[3]  The State's answer asserts lack of proper service and failure to include an indispensable party as two affirmative defenses, however, neither was raised in its motion for summary judgment.  Therefore, the Court does not address either of these contentions.

MEMORANDUM OF DECISION - 2

time under the motions.[4]

## BACKGROUND AND FACTS

After several years of marriage, Victoria and her ex-husband, Dr. Falck,

separated. In January, 1997, they entered into a written agreement (the

"Separation Agreement"). Under the Separation Agreement, Victoria and Dr.

Falck agreed that no spousal support or alimony would be claimed by either party,

but that Dr. Falck would pay Victoria support and maintenance for their three

children. In part, the Separation Agreement stated:

---

[4] The Court must address several preliminary procedural matters before turning to the meat of the parties' summary judgment arguments.

First, Victoria moved to strike an affidavit, Doc. No. 18. She argues that this affidavit was filed outside the Court's briefing schedule and that the delay was prejudicial to her. *See* Doc. No. 19. The Court admonishes Plaintiff that she should not throw stones when living in a glass house. She, too, filed papers outside the Court's briefing schedule, *i.e.*, she had 14 days to respond to the State's motion and submitted her response approximately 30 days after the motion was filed. *See* Doc. Nos. 8, 13, 20, and 21. Even without considering Plaintiff's similarly culpable conduct, the motion is found not well taken. There appears to have been no prejudice to Plaintiff as she took ample time to file her response, and had at least two weeks to address the challenged affidavit after it was filed. Moreover, even if the Court were inclined to find prejudice, this affidavit was not and is not used to support the grant of partial summary judgment in favor of the State. Thus striking it would be an action with little real consequence. The Court therefore DENIES Plaintiff's motion to strike, Doc. No. 19.

Second, the State has filed two motions: Doc. No. 23, an ex parte motion to shorten time to submit another affidavit, and Doc. No. 27, a post-hearing motion to supplement the record with yet another affidavit. In regard to the former, the State's attempt to submit an affidavit just four days prior to hearing (two of which were weekend days) did not allow Plaintiff sufficient time to respond. Moreover, such a submission failed to comply with either LBR 7056.1(b) or the Court's briefing order, and the State did not establish good cause for waiver. The motion to shorten time, Doc. No. 23, is DENIED. The latter motion seeks to supplement the record with yet another affidavit and exhibits. This motion is patently untimely. The summary judgment record was closed at the end of the March 29 hearing when the matter was taken under advisement. Thus, this motion, Doc. No. 27, is also DENIED. The subject affidavits have not been considered in this Court's analysis and discussion.

MEMORANDUM OF DECISION - 3

> [Dr. Falck] shall pay [Victoria] for the support and maintenance of the children of the marriage the sum of FIVE HUNDRED AND TWENTY ($520.00) DOLLARS per month for each of the children making together the sum of ONE THOUSAND FIVE HUNDRED AND SIXTY ($1,560.00) DOLLARS. The payments shall begin on the 1st day of December, 1996, and continue on the first day of each and every month thereafter for so long as the children remain eligible. . . .
>
> [Dr. Falck] and [Victoria] confirm that [Victoria] is providing care and homemaking services for the children in [Dr. Falck's] home to the extent of four hours per day. In the event that those services are withdrawn or terminated, the maintenance as provided . . . shall be reduced by the sum of $200.00 per child per month.
>
> If the three children are residing with and receiving full care by [Victoria], the payments shall remain at $520.00 per month for each of the children of the marriage.

*See* Doc. No. 16 (Schwab Affidavit), at attached Ex. A (certified court file) at 23-24. The Separation Agreement acknowledged that the division of property and child support arrangements did not comport with Canadian law and stated in several locations that the terms of the Separation Agreement would apply in spite of Canada's Family Relations Act and Divorce Act. *See id.* at 22, 25. The parties also agreed that the Separation Agreement would survive the divorce of the parties. *Id.* at 26.

In January, 1998, the Supreme Court of British Columbia entered an order granting Victoria a divorce (the "Divorce Order"). *Id.* at 56. The British Columbia court granted joint custody to Victoria and Dr. Falck, determined the parties' guideline incomes, and ordered child support in the following manner:

MEMORANDUM OF DECISION - 4

> [Dr. Falck] shall pay to [Victoria], for the maintenance and support of the children of the marriage, LISA ANN FALCK, [born] January 22, 1980, DANIEL STEWARD FALCK, born October 5, 1982, AND MATTHEW GRAEME FALCK, born May 5, 1986, the sum of $520.00 per month per child, for a total of $1,560.00 per month, for as long as the children are residing primarily with [Victoria] or, in the event that the children are not residing primarily with [Victoria], the sum of $320.00 per month per child, for a total of $960.00 per month . . . and shall continue . . . until the children are no longer children of the marriage as defined by the <u>Divorce Act, 1985</u>.

*Id.* at 57.

During or shortly after the parties' divorce, Victoria moved to Idaho to continue her education. The children stayed in Canada with their father. Dr. Falck ceased making payments to Victoria when she moved to Idaho. In December, 1999, Victoria registered the Divorce Order with the British Columbia Family Maintenance Enforcement Program[5] in order to enforce the agreement and collect past due support payments. When Dr. Falck was made aware of the attempt to enforce the past due obligation, he filed a motion with the British Columbia court to modify his child support obligations, set any past due amounts at zero and obtain child support *from* Victoria. *See* Doc. No. 16, at attached Ex. A at 13.

While Victoria was personally served with Dr. Falck's motion, *see id.* at 10,

---

[5] The parties refer to this British Columbia agency by different names. Victoria references the British Columbia Child Support Services (*see* Doc. No. 21 at 2) while Dr. Falck references the Family Maintenance Enforcement Program of British Columbia (*see* Doc. No. 18 at 2). The certified court record, Doc. No. 16, at attached Ex. A, appears to indicate the proper name is the Family Maintenance Enforcement Program (hereafter "FMEP").

MEMORANDUM OF DECISION - 5

she failed to appear for the hearing on the motion on July 4, 2000.[6]  At that

hearing, the British Columbia court set the child support arrearage owed by Dr.

Falck at zero, varied the Divorce Order such that Dr. Falck was not liable for any

child support payments in the future, ordered Victoria to provide Dr. Falck with

income information to determine any possible child support obligations owed by

her, and set a continued hearing on the matter.  *Id.* at 6-7.  Victoria failed to appear

at two further hearings or provide the income information required by the court's

order.  The British Columbia court ultimately imputed an income to Victoria and

ordered her to pay $300.00 per month for child maintenance commencing October

1, 2000.  *Id.* at 2 (the "Support Order").  In addition, the court awarded Dr. Falck

$500.00 in costs.  *Id.*

Victoria did not appeal or otherwise challenge in the British Columbia

courts the Support Order entered against her.  The FMEP, responsible for the

collection and enforcement of the child support order in favor of Dr. Falck, issued

a statement of arrears and sent the Support Order and statement to the State for

enforcement.  *See* Doc. No. 15 (Evensizer Affidavit).  The State suspended its

collection efforts when Debtors filed their chapter 7 petition.

_____

[6]  Initially, Victoria disputed personal service and personal jurisdiction.  However, at
hearing, she conceded she was served with the relevant papers and understood a hearing would
commence on the child support issue, but she argued she could not afford to attend the hearing
and thus did not.

MEMORANDUM OF DECISION - 6

**DISCUSSION AND DISPOSITION**

    **A.  Summary Judgment Standards**

The standards guiding the Court in consideration of the motions for summary judgment are well settled.  Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e); incorporated by Fed. R. Bankr. P. 7056; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

Further, the Court does not weigh the evidence in considering summary judgment.  It determines only whether a material factual dispute remains for trial.  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case.  *Far Out Prods.,* 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

The initial burden of showing there is no genuine issue of material fact rests on the moving party.  *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597, 00.4 I.B.C.R. 175, 178 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)).  If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to

MEMORANDUM OF DECISION - 7

establish the existence of that element in order to survive a motion for summary

judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

**B.  Nondischargeability under § 523(a)**

In general, before the Court can consider whether a debt should be excepted

from discharge under one of the subsections of § 523(a), the creditor must prove

that the debtor is indebted to it.  *Banks v. Gill Distribution Ctrs., Inc. (In re Banks)*,

263 F.3d 862, 868 (9th Cir. 2001) (holding that "there are two distinct issues to

consider in the dischargeability analysis: first, the establishment of the debt itself"

and, second, the nature of the debt).

**1.  The existence of a debt**

The parties do not dispute that the debt at issue in this case arises from the

Support Order.  Plaintiff argues, however, that the Support Order cannot be

recognized or enforced in Idaho and, thus, there is no valid, enforceable debt.

Plaintiff directs the Court to Idaho Code § 10-1301 as the provision dealing

with the enforcement of judgments from a foreign country.  However, that

provision specifically addresses judgments from courts within the United States,

not judgments from foreign countries.  It is rather, Idaho Code § 10-1401 *et seq.*

that deals with the enforcement of judgments from a foreign country.  However

Idaho Code § 10-1401 specifically excludes "a judgment for support in

MEMORANDUM OF DECISION - 8

matrimonial or family matters." Idaho Code § 10-1401.[7]

Idaho Code § 10-1407 makes it clear, though, that title 10, chapter 14 is not

the only means of enforcing a judgment from a foreign country, such as the one at

issue in this case. It states: "[t]his chapter does not prevent the recognition of a

foreign judgment in situations not covered by the provisions of this chapter." *Id.*

The statute does not address, however, the authorities that either allow or prevent

recognition.

The State directs this Court to the Restatement (Third) of Foreign Relations

Law (hereafter simply the "Restatement"), and several cases from other

jurisdictions discussing general principles of comity.[8] While no Idaho decision has

been cited by the parties or located by the Court which specifically adopts the

_____

[7] Plaintiff cites *Leasefirst v. Burns*, 953 P.2d 598, 601 (Idaho 1998) (citing *G&R
Petroleum, Inc. v. Clements*, 898 P.2d 50 n.1 (Idaho 1995)), for the proposition that Idaho Code
§ 10-1301, which specifically includes judgments for support of a child, is applicable to
judgements from foreign countries. However, *Burns*' holding rejected reliance on Idaho Code
§ 10-1401 *et seq.* when dealing with judgments from sister states and thus found that only the
grounds stated in Idaho Code § 10-1301 *et seq.,* for nonenforcement were applicable to sister
state judgments. In light of *Burns*, it is easy to conclude that chapters 13 and 14 of title 10, Idaho
Code, apply to the subject matter they say they do. That is, just as § 10-1401 *et seq.* is
inapplicable to judgments from within the United States, § 10-1301 *et seq.* is inapplicable to
judgments from foreign countries.

[8] The State does not assert that Idaho's Uniform Interstate Family Support Act, Idaho
Code § 7-1001 *et. seq*., would apply to the recognition of support orders from Canadian courts.
But a persuasive argument could be made that Canada has "enacted a law or established
procedures for issuance and enforcement of support orders which are substantially similar to the
procedures under this chapter [chapter 10 of title 7, Idaho Code]" and, thus, enforcement of
Canadian support orders are governed by Idaho Code § 7-1046. *See* Idaho Code § 7-1001(19)(b).
The Court determines however, that under either Idaho Code § 7-1046 or the Restatement, the
judgment is enforceable. The issue becomes whether the enforceable debt under the judgment
[the Support Order] is truly in the nature of support, as is discussed later in this Decision.

MEMORANDUM OF DECISION - 9

Restatement, this Court believes Idaho courts, like several of their sister state courts, would follow general principles of comity and the factors outlined in the Restatement in determining if a foreign support order is entitled to domestic recognition and enforcement. *See, e.g., Adams v. Adams*, 869 A.2d 124 (Vt. 2005) (applying the standards laid out in the Restatement to determine the enforceability of a Honduras court divorce decree); *Renoir v. Redstar Corp.*, 20 Cal. Rptr. 3d 603 (Cal. Ct. App. 2004) (referencing the Restatement in determining if a French judgment was entitled to recognition); *Hilkmann v. Hilkmann*, Doc. No. 29 WAP 2003, 2004 WL 2098566 (Pa. September 21, 2004) (discussing comity and the Restatement in determining if an Israeli guardianship judgement was entitled to recognition in Pennsylvania); *Roy v. Buckley*, 698 A.2d 497 (Me. 1997) (dealing with comity and the Restatement in recognizing a Canadian default judgment).

The Restatement specifically addresses the recognition and enforcement of foreign support orders. It states:

§ 486. Recognition and Enforcement of Foreign Support Orders

(1)     A court in the United States will recognize and enforce an order of a foreign court for support, valid and effective under the law of the state where it was issued, if the issuing state

(a)     was the domicile or habitual residence of both parties to the marriage when the obligation for support accrued.

(b)     was the domicile or habitual residence of the support debtor at the time the order was issued; or

(c)     was the domicile or habitual residence of the

MEMORANDUM OF DECISION - 10

> support creditor, and the support debtor appeared
> in the proceedings.

The Restatement goes on to note, however, that when a support order is entered by

default, "the fact that the support debtor did not participate in the action does not

render the judgment unenforceable in the United States." *Id.* at § 486 n.4 (citing

*Nicol v. Tanner,* 256 N.W.2d 796 (1976)).

Therefore it appears that because the support creditor (Dr. Falck) was

domiciled in and a resident of British Columbia at the time the Support Order was

entered, and because the support debtor (Victoria) was given notice and provided

an opportunity to appear, but chose not to and allowed a default judgment to be

entered against her, the Support Order should be recognized by Idaho courts. *Id.* at

§ 486(1)(c).

The State also references § 482 of the Restatement, providing grounds for

nonrecognition of foreign judgments largely analogous to the provisions found in

Idaho Code § 10-1404:

§ 482  Grounds for Nonrecognition of Foreign Judgments

(1)    A court in the United States may not recognize a
judgment of the court of a foreign state if:
(a)    the judgment was rendered under a judicial
system that does not provide impartial tribunals or
procedures compatible with due process of law; or
(b)    the court that rendered the judgment did not have
jurisdiction over the defendant in accordance with
the law of the rendering state and with the rules
set forth in § 421.

MEMORANDUM OF DECISION - 11

> (2)  A court in the United States need not recognize a judgment of the court of a foreign state if:
>
> > (a)  the court that rendered the judgment did not have jurisdiction of the subject matter of the action;
> >
> > (b)  the defendant did not receive notice of the proceedings in sufficient time to enable him to defend;
> >
> > (c)  the judgment was obtained by fraud;
> >
> > (d)  the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought;
> >
> > (e)  the judgment conflicts with another final judgment that is entitled to recognition; or
> >
> > (f)  the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum.

Section (1) lists two grounds requiring mandatory nonrecognition, while section (2) lists six grounds for permissive nonrecognition.  Plaintiff advances arguments falling into both categories.[9]

### a.  Mandatory nonrecognition

### i.  Personal jurisdiction

Plaintiff argues that the British Columbia court lacked "jurisdiction" to enter the Support Order due to the Separation Agreement and the Divorce Order.  Originally, her arguments focused on an alleged lack of personal jurisdiction due to inadequate service.  However, this argument was expressly abandoned at the

---

[9] Plaintiff's arguments were based on the Idaho Code.  She did not establish that these statutory provisions were controlling.  However, the bulk of her arguments can be evaluated under the various sections of the Restatement.

MEMORANDUM OF DECISION - 12

summary judgment hearing and in Victoria's affidavit.  *See* Doc. No. 21 at 2.  In

addition, the court documents reflect that Victoria was personally served in British

Columbia and chose not to appear at any of the hearings on the matter.  *See* Doc.

No. 16, at attached Ex. A at 10.  Plaintiff no longer disputes being served.  No

other credible "jurisdictional" arguments are presented.  Thus, Restatement

§ 482(1)(b) does not prohibit the recognition of the Support Order.

### ii.  Due process

Plaintiff also asserts that because Canada is not required to follow the

Fourteenth Amendment to the United States Constitution, Canadian courts do not

afford litigants adequate due process of law.  However, the Restatement does not

require that the foreign country follow the United States Constitution or its

Amendments; it merely requires that the country's judicial system provide an

impartial tribunal[10] and "procedures compatible with due process of law."

Canadian courts provide such due process.  The Canadian Bill of Rights

states:

> 1.  It is hereby recognized and declared that in Canada there have
> existed and shall continue to exist without discrimination by reason of
> race, national origin, colour, religion or sex, the following human rights
> and fundamental freedoms, namely,
>
>> (a)    the right of the individual to life, liberty, security of the
>> person and enjoyment of property, and the right not to be

---

[10]  Plaintiff does not argue that the Supreme Court of British Columbia was anything
other than an impartial tribunal.

MEMORANDUM OF DECISION - 13

deprived thereof except by due process of law[.]

Canadian Bill of Rights, R.S.C. 1985, Appendix III, § 1.  This Court has been

given no cogent reason to conclude the courts in British Columbia do not

recognize and protect these fundamental freedoms.[11]  Therefore, there is no

mandatory bar under Restatement § 482(1)(a) on recognizing the Support Order.

### b.  Permissive nonrecognition

### i.  Subject matter jurisdiction

Plaintiff's jurisdictional argument can also be viewed as one questioning

subject matter jurisdiction.  She argues that in the Separation Agreement, Dr. Falck

agreed to "give[] up all claims at law, in equity, or by statute against [Victoria]

including, . . . the Family Relations Act, . . . and the Divorce Act, with respect to . .

. support" and to vary the Separation Agreement only by written consent.  Such

agreements, Plaintiff argues, not only precluded Dr. Falck from seeking the

Support Order, they further precluded the British Columbia court from entering the

Support Order by eliminating its "jurisdiction" to do so.

First, the Court must note that although Plaintiff asserts that the Separation

Agreement was incorporated into the Divorce Order, the Court finds no language

specifically incorporating the entirety of the Separation Agreement in the Divorce

---

[11]  In fact, the record reflects the British Columbia court's cognizance of and concern over Victoria's due process rights by its continuation of Dr. Falck's motion twice to give Victoria a chance to provide the required financial information and appear in court before entering a default order against her.  *See* Doc. No. 16, at attached Ex. A.

MEMORANDUM OF DECISION - 14

Order.  *See* Doc. No. 16, at attached Ex. A at 56-58.  While the British Columbia

court did award child maintenance in the same manner or fashion as outlined in the

Separation Agreement, it granted the divorce and child custody and maintenance

with specific reference to the Divorce Act.[12]

The Divorce Act and Family Relations Act give the Supreme Court of

British Columbia the jurisdiction to grant divorces, award alimony, grant child

custody and award child maintenance and to have continuing jurisdiction over

those awards.  *See, e.g.,* Divorce Act R.S.C. 1985, c. 3 (2nd Supp), § 5(1)

("Jurisdiction in variation proceedings"); § 15.1 (Child Support Orders); § 17(1)

("Order for variation, rescission or suspension"); Family Relations Act R.S.B.C.

1996, c. 128, § 5 (noting that "[t]he Supreme Court continues, subject to the

*Divorce Act* (Canada), to have jurisdiction in all matters concerning the custody of,

access to and guardianship of children, dissolution of marriage, nullity of marriage,

judicial separation, alimony and maintenance.")  The Separation Agreement did

not and could not deprive the court of this jurisdiction.  *See Varey v. Varey*, B.C.

W.L.D. 1947 ¶ 20 (B.C. S.C. 1995) (holding that "the provisions of child support

in an agreement, while affording strong evidence that the agreement made

---

[12]  While § 15.1(5) of the Divorce Act was not specifically referenced in the court's
award of child maintenance and support in the Divorce Order, it allows Canadian courts to
"award an amount that is different from the amount that would be determined in accordance with
the applicable guidelines if the court is satisfied (a) that special provisions in . . . a written
agreement respecting the financial obligations of the spouses, or the division or transfer of their
property, directly or indirectly benefit a child, or that special provisions have otherwise been
made for the benefit of a child."  It appears that is what occurred in this case.

MEMORANDUM OF DECISION - 15

adequate provisions for the needs of the child at the date the agreement was made, do not bind a court and limit the court's jurisdiction to deal with child support").

In addition, Plaintiff argues that the British Columbia court lacked subject matter jurisdiction to enter a support order regarding two of the parties' three children because they were over 18 and, thus, were not eligible for support. The children's ages do not deprive a court of the ability to enter support orders. If the British Columbia court incorrectly ordered support for children who were no longer "children of the marriage" as defined by Canadian law,[13] Victoria had the right and ability to appeal that order. She failed to do so.

Here, as in many other ways, Plaintiff confuses questions of subject matter jurisdiction with the merits of her underlying argument regarding the impropriety of imposing child support against her and in favor of Dr. Falck. As the United States Supreme Court recently noted, the word "jurisdiction" is "a word of many, too many, meanings." *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004). Under the

---

[13] Plaintiff's arguments specifically rely on Idaho law in alleging that the age of majority is 18 years. However, Canadian law states that "age of majority" is determined by the law of the province. Divorce Act at § 2(1). In British Columbia, the age of majority is nineteen. *See Longhurst v. Longhurst*, 2004 BCSC 1017 (B.C. S.C. 2004). In addition, Canadian courts may award support for any "child of the marriage" which is defined as "a child of two spouses or former spouses who, at the material time, (a) is under the age of majority and who has not withdrawn from their charge, or (b) is the age of majority or over and under their charge but unable, by reason of illness, disability or other cause, to withdraw from their charge or to obtain the necessaries of life." Divorce Act at § (2)(1); *see also Longhurst*, 2004 BCSC 1017 (explaining that withdrawing from parents charge is in many ways equated with financial independence and, if a child who no longer lives with his/her parents requires continued financial assistance, that child may still qualify as a child of the marriage.) It therefore appears that in British Columbia, the courts may award child support for a child over 19 years of age if he or she still requires parental financial assistance.

MEMORANDUM OF DECISION - 16

rubric of "jurisdiction," Plaintiff argues not just that the British Columbia court

"could not" enter the Support Order but, even more strenuously, that it "should

not" have entered the Support Order for the various reasons indicated, all of which

go to the merits of the decision and not that court's ability to decide the issue.

The Plaintiff's "jurisdictional" contentions are without legal merit, and the

Court concludes the British Columbia court had subject matter jurisdiction to enter

the Support Order and to modify its previous Divorce Order.  The arguments under

Restatement § 482(2)(a) fail.

### ii.  Fraud and public policy

Plaintiff again relies on the ages of the two eldest children in arguing that

the Support Order was obtained by Dr. Falck's fraud, and that the Support Order

violates the public policy of Idaho and thus should not be recognized.  She asserts

that Dr. Falck failed to inform the British Columbia court that two of the three

children were "over the age of majority" and not residing with Dr. Falck at the

time the Support Order was entered and thus he obtained the Support Order

through fraud.[14]

This is not the type of "fraud" that should cause a court to deny recognition

---

[14]Although the children's ages were a focal point of Plaintiff's arguments, she failed to
provide this Court with the ages of the children as of October 2, 2000 when the Support Order
was entered.  However, the parties agree that the Separation Agreement found in the British
Columbia court record, Doc. No. 16, at attached Ex. A at 21-27, is accurate.  It contains the birth
dates of the three children.  These are January 22, 1980, October 5, 1982 and May 5, 1986.  So,
on October 2, 2000, the eldest child was 20, the middle child was a few days away from turning
18, and the youngest was 14.

MEMORANDUM OF DECISION - 17

of a foreign support order.  Nonrecognition is prompted by "extrinsic fraud" or a fraud that "deprived the losing party of adequate opportunity to present its case to the court."  Restatement at § 482 cmt. e.  Thus, even if Dr. Falck failed to provide the Court with the children's ages, such a failure did not deprive Victoria of an opportunity to appear and defend against Dr. Falck's motion for child support, by raising the issue of the children's ages or any other matter.  The fact that the parties appear to dispute whether the British Columbia court was adequately informed of the children's ages is determined by this Court to be immaterial.  The arguments under Restatement § 482(2)(c) are not well taken.

Plaintiff's public policy argument is equally unavailing.  Plaintiff initially relies on Idaho Code § 32-705(1), which deals with spousal support awards, to argue that Victoria would be entitled to support under Idaho law.  This argument focuses on the Separation Agreement and Divorce Order and what Victoria alleges to be a disguised property division and spousal support existing therein under the rubric of "child support."  However, this Court is not determining the propriety of the British Columbia court's modification of the Divorce Order nullifying past due child support payments owed by Dr. Falck, which Victoria now alleges were disguised spousal support.  Nor is this Court interpreting the Separation Agreement or the Divorce Order to determine if the child support agreed to in 1997 or awarded in 1998 was truly child support and not spousal support or a property

MEMORANDUM OF DECISION - 18

settlement.  This Court is asked only to determine if the debt reflected by the

Support Order in 2000 is dischargeable.  Plaintiff's arguments regarding any

possible entitlement to spousal support from Dr. Falck is irrelevant to the debt

owed by Victoria to Dr. Falck under the Support Order at issue in this case.[15]

Plaintiff also relies on Idaho Code § 7-1121 which limits an Idaho court's

authority to order child support once a child reaches eighteen years of age.[16]  She

argues that any order from a foreign country that grants child support beyond the

limits of Idaho's law is contrary to public policy.

The public policy exception to recognition of foreign judgments was not

intended to be so narrowly read or interpreted.  The Restatement makes it clear

that "the fact that a particular cause of action does not exist or has been abolished

in the state where recognition or enforcement is sought . . . does not necessarily

make enforcement of a judgment based on such an action contrary to the public

policy of the recognizing State or of the United States."  Restatement § 482 cmt. f;

*see also* § 482 n.1.  Such nonrecognition is reserved for judgments based on claims

that are "contrary to fundamental notions of decency and justice."  Restatement

---

[15]  Plaintiff has not pleaded a personal right of recovery against Dr. Falck, nor any claims
against the State, which somehow would constitute a setoff to the State's claim.  *See* Doc. No. 1.
The issue she presents is only whether the State may enforce and collect the claim against her
under the Support Order notwithstanding the bankruptcy discharge.  *Id.*

[16]  Idaho Code § 7-1121 limits child support awards to a child under eighteen years of age
or, if continuing in high school after eighteen years, until the child discontinues his/her high
school education or reaches the age of nineteen, whichever occurs first.

MEMORANDUM OF DECISION - 19

§ 482 cmt. f.

Here, the Support Order recognizes a parent's obligation to support her children.  Idaho also recognizes this policy and enforces it within its own system. *See* Idaho Code § 7-1001 *et. seq.*  That Canada believes children of a marriage are entitled to support beyond their eighteenth birthdays and that the Support Order in question may establish support for one or more children beyond their eighteenth birthdays is not contrary to fundamental notions of decency and justice.  Instead, the law of Canada merely extends a public policy Idaho already embraces: parents should support their children.  The Court finds no legitimate basis to deny recognition of the Support Order on public policy grounds.  The public policy contentions advanced under Restatement § 482(2)(d) are rejected.

### iii.  Forum

Finally, Plaintiff argues the Support Order should not be recognized because it was obtained in an improper forum, contrary to the Separation Agreement.  *See* Restatement § 482(2)(f).  The Separation Agreement states that "the parties may vary this Agreement only by a written agreement signed in the same manner as this Agreement."  Doc. No. 16, at attached Ex. A at 27.  Plaintiff contends the only legitimate way Dr. Falck could modify the Separation Agreement was by written approval of both Dr. Falck and Victoria.

First, the Court notes again that the Separation Agreement was not

MEMORANDUM OF DECISION - 20

expressly incorporated into the Divorce Order.  This vitiates Plaintiff's argument

that the Separation Agreement presents a judicially adopted impediment to the

British Columbia court altering its prior Divorce Order.  Moreover, as noted in

*Varey*, B.C. W.L.D. 1947, the Separation Agreement could not bind the court or

deprive the court of jurisdiction over child support orders.

Second, the forum provision found in § 482(2)(f) of the Restatement was

intended to operate when an alternate forum had been selected by parties to a

contract.  *See* Restatement § 482 cmt. h.  Here, no alternate forum was designated

by the parties.  Thus, the judgment from the British Columbia court does not

appear subject to permissive nonrecognition under this provision.

And third, if the Separation Agreement is deemed to control even though

lacking any alternate forum selection clause, the Separation Agreement also

recognizes that further legal action may be contemplated and sought by either Dr.

Falck or Victoria.  It states: "If either party takes any proceeding with respect to

their property or responsibilities to each other, this Agreement a) must be filed or

exhibited in the proceedings, and b) may be raised as a defense to the proceedings

insofar as those provisions and responsibilities have been provided for in this

Agreement."  Doc. No. 16, at attached Ex. A at 26.  Thus, it appears the parties

themselves contemplated the possibility of legal actions, and sought to preserve

MEMORANDUM OF DECISION - 21

their ability to raise and rely upon the written agreement.[17]  The Court finds no

merit to Debtors' forum selection arguments under § 482(2)(f).

After considering all Debtors' legal arguments, the Court concludes the

Support Order would be recognized by Idaho courts and, thus, the State has

established a prima facie enforceable debt.  Summary judgment on this component

of the § 523(a)(5) cause of action will be granted in favor of the State.

### 2.  The nature of debt under § 523(a)(5)

Section 523(a)(5) makes debts for child support and spousal support

nondischargeable in bankruptcy.  It provides:

> (a)  A discharge under section 727 . . . does not discharge an individual
> debtor from any debt —
> . . .
>> (5) to a spouse, former spouse, or child of the debtor, for
>> alimony to, maintenance for, or support of such spouse or child,
>> in connection with a separation agreement, divorce decree or
>> other order of a court of record, determination made in
>> accordance with State or territorial law by a governmental unit,
>> or property settlement agreement, but not to the extent that–
>>> (A) such debt is assigned to another entity, voluntarily,
>>> by operation of law, or otherwise (other than debts
>>> assigned pursuant to section 408(a)(3) of the Social
>>> Security Act, or any such debt which has been assigned
>>> to the Federal Government or to a State or any political
>>> subdivision of such State); or
>>> (B) such debt includes a liability designated as alimony,
>>> maintenance, or support, unless such liability is actually
>>> in the nature of alimony, maintenance, or support[.]

---

[17]  As noted, Victoria was served (despite her initial pleadings flatly denying service) and
had the opportunity to appear and raise the questions regarding the Separation Agreement and its
impact on the modifications and relief sought by Dr. Falck.  She did not do so.

MEMORANDUM OF DECISION - 22

Thus a creditor must show that the debt in question is for alimony, maintenance or support of a spouse, former spouse or child of the debtor, and arises from or in connection with a separation agreement, divorce decree or other order of a court. A defendant may dispute these factual predicates, or contest the nondischargeable nature of such a debt by showing that the debt falls within one of the exclusions found in § 523(a)(5)(A) or (B).[18]

Determining if a debt is truly in the nature of support is a question of federal law. *In re Martin*, 04.3 I.B.C.R. 131, 132 (Bankr. D. Idaho 2004); *Norris v. Norris (In re Norris)*, 94 I.B.C.R. 233, 234 (Bankr. D. Idaho 1994) (citing *Shaver v. Shaver*, 736 F.2d 1314, 1315-16 (9th Cir. 1984)); *see also Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 137-38 (9th Cir. BAP 1997). In determining if a debt is truly in the nature of support, the Court must look beyond the language of the decree to the intent of the parties or the issuing court and to the substance of the obligation. *See Shaver*, 736 F.2d at 1316-17; *see also* 4 Collier on Bankruptcy § 523.11[6] (Alan N. Resnick & Henry J. Sommer eds., rev. 15th ed. 1998).

Here the State provided the Court with the Support Order from British Columbia that orders: "plaintiff Victoria Ann Falck, now known as Victoria Ann

---

[18] Victoria makes no argument under § 523(a)(5)(A) regarding the "assignment" of the debt to either FMEP or the State. The focus is on whether the obligation is "actually in the nature of . . . support" under § 523(a)(5)(B).

MEMORANDUM OF DECISION - 23

Purviance, [to] pay to the defendant Garner Ralph Falck $300 per month for child

maintenance commencing on the 1st day of October, 2000 and continuing on the

first day of each and every month thereafter." Doc. No. 16, at attached Ex. A at 2.

On its face, this appears to be an award of child support. Of course, as noted

above, this Court must look beyond the labels found in the Support Order and

attempt to determine the intent of the British Columbia court in entering this relief.

Plaintiff raises several arguments regarding the nature of the original

support debt owed by Dr. Falck to Victoria found within the Separation Agreement

and Divorce Order. But as noted earlier in this Decision, this is not an issue before

this Court. Any debt owed by Dr. Falck to Victoria was eliminated by the British

Columbia court. The complaint in this adversary proceeding seeks no affirmative

recoveries. The debt at issue in this case, under Plaintiff's complaint, is the one

*she* owes arising out of the Support Order.

As to the characterization of the obligation in the Support Order, Plaintiff

continues to argue it could not actually be in the nature of support because two of

the three children were over Idaho's age of majority at the time it was entered and

not "entitled" to such support. As this Court noted above, Canada's laws apply to

the Support Order and those laws look at several facts, not solely age, to determine

if a child is eligible for support as a "child of the marriage." *See* discussion *supra*

note 13 and accompanying text. The issue is not as easily resolved as Plaintiff

MEMORANDUM OF DECISION - 24

believes.

Plaintiff contests the nature of the support debt by asserting that the two eldest children were no longer living with their father. She also argues that the eldest child earned more money than her mother, in essence arguing that this child was capable of supporting herself. *See* Doc. No. 21 at 2-3. On the other hand, Dr. Falck asserts that he was responsible for and provided "sole care" for all three children since Victoria moved to Idaho. *See* Doc. No. 18 at 2. Given these conflicting factual assertions, along with the absence of clarity on several other potentially relevant facts, the Court determines that genuine issues of material fact remain as to whether the Support Order was truly in the nature of support within contemplation of § 523(a)(5)(B). The Court must therefore deny the balance of the State's motion for summary judgment, as well as the entirety of Plaintiff's motion. This matter will proceed to trial for presentation of evidence necessary to determine if and to what extent the Support Order was truly in the nature of support.[19]

---

[19]  The Court notes that Plaintiff has not presented any Rule 7056 submissions regarding the § 523(a)(5)(B) issue as it relates to the support for the youngest child under the Support Order. Thus, the amount of the Support Order debt allocated or attributable to the youngest and admittedly minor child of the marriage will be nondischargeable under § 523(a)(5). However, the Court is unable to enter partial summary judgment for the State because nothing was presented by it regarding how the $300.00 per month award for child support was apportioned, if at all, amongst the three children. While Victoria asserts it must be divided equally amongst the three children, neither the Support Order nor the FMEP or State documents allocate the support in such a manner. *See* Doc. Nos. 15, 21. The Court is unwilling to assume an equal division for purposes of summary judgment. If a division of the Support Order is required (*i.e.*, if it is determined after trial that some of the Support Order is not actually in the nature of support), the Court can address
(continued...)

MEMORANDUM OF DECISION - 25

In addition, Plaintiff has not raised, but the Court notes, that a portion of the Support Order ($500.00) is attributable to "costs" awarded to Dr. Falck. This Court has previously noted that the primary consideration in determining if such an award is nondischargeable is whether it was based on financial need. *See Martin*, 04.3 I.B.C.R. at 132 (citing *Norris*, 94 I.B.C.R. at 235). The parties have not addressed the financial need of Dr. Falck or the children at the time the Support Order was entered. Therefore, in the absence of a sufficiently clear record, the Court also cannot enter summary judgment in favor of either the State or Plaintiff as to that $500.00 cost award.

## CONCLUSION

One issue is resolved: an enforceable debt exists in this case. Partial summary judgment will be granted in favor of the State on this issue. Plaintiff's motion for summary judgment on this issue will be denied.

There exist issues of fact as to whether that debt was actually in the nature of support. Therefore, summary judgment will be denied for both the State and Plaintiff and the matter will proceed to trial on that issue. An appropriate order will be entered.

---

[19](...continued)
the problem of determining the portion that is nondischargeable in light of the evidence. If no division of the Support Order is required, the issue is moot.

MEMORANDUM OF DECISION - 26

DATED:  June 9, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 27

<u>CERTIFICATE RE: SERVICE</u>

A "notice of entry" of this Decision, Order and/or Judgment has been served on Registered Participants as reflected by the Notice of Electronic Filing. A copy of the Decision, Order and/or Judgment has also been provided to non-registered participants by first class mail addressed to:

Larry D. Purviance
2021 W. Lundy
Post Falls, ID 83854

Susan K. Servick, P.C.
Special Deputy Attorney General
Attorney at Law
P.O. Box 2900
Coeur d'Alene, ID 83816

Susan K. Servick
P.O. Box 1336
Coeur d'Alene, ID 83816-1336

Case No. 04-6153 (Purviance v. Region 1 Self Reliance Program)

Dated: June 9, 2005

/s/Jo Ann B. Canderan
Judicial Assistant to Chief Judge Myers

MEMORANDUM OF DECISION - 28